**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hayward Lee BURNETT and Lee Arthur Demas, Jr.,
Defendants-Appellants.**

**No. 75–2619
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

R. David Broiles, Fort Worth, Tex. (Court-appointed), for Burnett.

Frank D. McCown, U. S. Atty., Richard B. Vance, Michael P. Carnes, Asst. U. S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

Hayward Burnett and Lee Demas were each convicted on two counts of uttering and possessing counterfeit obligations in violation of 18 U.S.C. § 472. The dispositive argument on appeal is whether the trial judge improperly admitted evidence which was the product of arrests and searches conducted in violation of the fourth amendment.[1] We hold that the evidence was correctly admitted because it was obtained by a proper search incident to a lawful arrest.[2]

■ Between one o'clock and two o'clock p. m., October 21, 1974, IRS and Secret Service agents interviewed Stephanie Huey-You in their offices in Fort Worth, Texas. She informed them that the appellants had spent the morning in her apartment and that one of the appellants had attempted unsuccessfully to pass a $100 bill through her roommate. From this interview and other information, the agents had probable cause to arrest appellants for uttering and possessing counterfeit $100 bills.[3]· The agents also learned that appellants might leave the state that evening, and they were uncertain whether the appellants were still to be found at Ms. Huey-You's apartment. The agents waited for reinforcements from Dallas and proceeded to Ms. Huey-You's apartment at approximately 3:30 p. m. Ms. Huey-You, who did not have her apartment key, obtained entrance for herself and the agents by requesting appellants to "let us in." The agents immediately searched both Demas and Burnett, finding three counterfeit bills in Burnett's wallet. Demas and Burnett were then arrested.

■■ Although appellants argue that the agents had ample opportunity to obtain an arrest or search warrant, this

---

1. Appellants object to the admission of their statements and the counterfeit bills. Their argument is clearly applicable to the three counterfeit $100 bills found in Burnett's wallet and to the statements made by each defendant on the evening of their arrest. *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Our disposition of the case makes it unnecessary to consider Demas' standing to challenge the search of Burnett's wallet. It also makes it unnecessary to decide whether Burnett's second statement, made the following morning after his initial appearance before a magistrate, and the eleven counterfeit bills discovered as a result of the second statement are truly "fruits" of the initial arrest and search. We do not see how appellants' argument has any bearing on the admissibility of the counterfeit bill obtained from a bank after its successful passage at a service station.

2. In view of this holding and its rationale, we do not consider the legal significance of the "consent to search" form signed by Stephanie Huey-You. Nor do we consider the issues concerning 18 U.S.C. § 3056.

3. Since appellants concede the existence of probable cause, we do not further discuss the factors demonstrating its existence other than to say· that the record thoroughly justifies this concession.

argument, even if true, does not invalidate their arrests. A warrantless arrest is lawful so long as the arresting officers have probable cause. *E.g., United States v. Hofman,* 488 F.2d 287 (5th Cir. 1974) (no warrant); *United States v. Morris,* 477 F.2d 657, 663 (5th Cir.), *cert. denied,* 414 U.S. 852, 94 S.Ct. 146, 38 L.Ed.2d 101 (1973) (invalid warrant).[4] Since the arrests were valid, the incidental search of Burnett was permissible without a warrant. The propriety of the search is unaffected by the fact that it immediately preceded rather than followed the formal arrest. *E.g., Thornton v. Beto,* 470 F.2d 657 (5th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973); *United States v. Brookins,* 434 F.2d 41 (5th Cir. 1970), *cert. denied,* 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971).

Appellants attempt to avoid these well-established principles by arguing that the agents' purpose for entering the apartment was to conduct an invalid warrantless search rather than to make the arrests. Even if such a purpose would alter the result, the record does not support appellants' assertion. While the agents undoubtedly intended to search the apartment even if appellants were absent, nothing suggests that their entrance was purely to search the premises.

Affirmed.

---

**4.** Since Ms. Huey-You consented to the agents' entering her apartment, this case does not present the more difficult situation of an officer's entering a suspect's home to make a warrantless arrest. *See Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 863, 43 L.Ed.2d 54, 65 n. 13 (1975). The timespan between the acquisition of probable cause and the arrest distinguishes this case from *United States v. Watson,* 504 F.2d 849 (9th Cir. 1974), *cert. granted,* 420 U.S. 924, 95 S.Ct. 1117, 43 L.Ed.2d 392 (1975).